UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID MICHAEL BAILEY, | No. 2:24-cv-03231-JAM-AC |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION TO DISMISS IN PART** |
| COUNTY OF STANISLAUS, et al., | |
| Defendants. | |

Defendants the County of Stanislaus ("County"), Deputy Rose, Deputy Larson, and Deputy Garcia have moved to dismiss several of Plaintiff David Michael Bailey's ("Plaintiff") federal and state law claims stemming from the fatal police shooting of his nephew in 2024. For the reasons set forth below, Defendants' motion will be granted in part and denied in part.

## I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

This case arises out of the fatal police shooting of Plaintiff's nephew, Kevin Frey ("Frey"), on May 5, 2024. See Second Am. Compl. ("SAC") ¶¶ 1, 27, ECF No. 36. Frey was shot after law enforcement responded to a 911 call in which the caller reported that a man, later identified as Frey, was trespassing on his property in Stanislaus County, California. Id. ¶¶ 28-29. The caller noted Frey appeared to be either intoxicated or under

the influence of drugs.  Id. ¶ 30.  Defendant Rose, a deputy with

the Stanislaus County Sheriff's Department ("Sheriff's

Department"), responded to the call at approximately 4:11 p.m.,

and found Frey, who was homeless, "calmly lying underneath a tree

with his dog, several feet from the street."  Id. ¶¶ 23-24, 31.

Defendant Rose informed Frey he was on private property, and Frey

responded he would leave.  Id. ¶ 32.  Defendant Rose informed

Frey he was not free to leave.  Id.  Nevertheless, Frey "slowly

and calmly" walked away from Defendant Rose.  Id. ¶ 33.  Frey did

not threaten or attempt to harm Defendant Rose, but informed

Defendant Rose that he had a knife he carried for his safety.

Id.  Defendant Rose told Frey to put the knife down.  Id. ¶ 35.

Frey, becoming irate, responded that he just wanted to leave.

Id.  Frey put his knife in his backpack and continued walking

down the street.  Id. ¶ 36.

   Defendant Rose followed Frey in a patrol car yelling "stop,"

and pointing his handgun out of the window towards Frey, who sat

down underneath another tree.  Id. ¶ 37.  Defendant Rose

positioned himself 50 feet away from Frey.  Id. ¶ 38.  Defendants

Larson and Garcia, deputies with the Sheriff's Department, also

arrived at the scene and positioned themselves about 100 feet

away from Frey.  Id. ¶¶ 23-24, 38.  Finally, City of Turlock

Police Officer Diaz arrived accompanied by a K9 officer.  Id.

¶ 53.  Defendant Rose spent 15 minutes speaking with Frey during

which time he realized Frey was mentally ill and requested a

crisis negotiation team.  Id. ¶ 39.  Frey became agitated as his

detention progressed.  Id. ¶ 52.

   At approximately 4:31 p.m., without waiting for the crisis

negotiation team to arrive, Defendant Garcia commanded Frey to drop his knife or else "the K9 will bite him." Id. ¶ 55. In response, Frey stood up and walked slowly and unsteadily towards Defendant Rose. Id. ¶ 56. Frey's "slow, staggering walk was consistent with the 911 caller's reports that he was intoxicated." Id. ¶ 57. Frey "did not pose an imminent threat of safety or death to anyone" as he "appeared frail and was incapable of even maintaining a steady walk." Id. ¶¶ 58, 62. Despite this, Defendant Larson shot Frey with his assault rifle from about 100 feet. Id. ¶ 62. Frey died several minutes later from the gunshot wound. Id.

Plaintiff brought this action on November 20, 2024, as Frey's successor in interest, alleging causes of action under 42 U.S.C. § 1983 and state law. See ECF No. 1. Plaintiff alleged that Frey's mother, Judy Frey, was Frey's successor in interest at the time of his death, but that she had since died, making Plaintiff, Frey's uncle, the successor. See id. ¶¶ 4, 8. The Court dismissed Plaintiff's initial Complaint on April 15, 2025, finding Plaintiff had not adequately pled standing to bring this action as Frey's successor in interest. ECF No. 20. Plaintiff filed his First Amended Complaint on May 2, 2025. ECF No. 21. The Court subsequently dismissed Plaintiff's claims again for failing to adequately plead standing as Frey's successor in interest. ECF No. 35.

Plaintiff filed his operative Second Amended Complaint on August 18, 2025, alleging seven causes of action for (1) excessive force under 42 U.S.C. § 1983 against Defendants Larson, Rose, and Garcia; (2) unreasonable seizure under 42

1  U.S.C. § 1983 against Defendants Larson, Rose, Garcia, and the

2  County; (3) due process violation under 42 U.S.C. § 1983 against

3  Defendants Larson and Rose; (4) municipal liability under 42

4  U.S.C. § 1983 against the County; (5) battery against Defendant

5  Larson and the County; (6) negligence against Defendants Larson,

6  Rose, Garcia, and the County; and (7) violation of the Bane Act,

7  California Civil Code section 52.1, against all Defendants.  SAC

8  ¶¶ 67-135.  Defendants filed the pending Motion to Dismiss (ECF

9  No. 38) Plaintiff's claims for lack of standing and for failure

10  to adequately plead his excessive force, unreasonable seizure,

11  negligence, and Bane Act claims.  Plaintiff filed an Opposition

12  (ECF No. 40) and Defendants filed a timely Reply (ECF No. 42).

13  The matter was submitted without oral argument pursuant to Local

14  Rule 230(g).  ECF No. 43.

15                        **II.  LEGAL STANDARD**

16      A Rule 12(b)(6) motion challenges the sufficiency of a

17  complaint for "failure to state a claim upon which relief can be

18  granted."  Fed. R. Civ. P. 12(b)(6).  The motion may be granted

19  only if the complaint lacks a "cognizable legal theory or

20  sufficient facts to support a cognizable legal theory."

21  Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th

22  Cir. 2008).  The court assumes all factual allegations are true

23  and construes "them in the light most favorable to the nonmoving

24  party."  Steinle v. City & Cnty. of San Francisco, 919 F.3d 1154,

25  1160 (9th Cir. 2019) (quoting Parks Sch. of Bus., Inc. v.

26  Symington, 51 F.3d 1480, 1484 (9th Cir. 1995)).  That said, if

27  the complaint's allegations do not "plausibly give rise to an

28  entitlement to relief" the motion must be granted.  Ashcroft v.

4

1  Iqbal, 556 U.S. 662, 679 (2009).

2      A complaint need contain only a "short and plain statement

3  of the claim showing that the pleader is entitled to relief,"

4  Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations."

5  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  However,

6  this rule demands more than unadorned accusations; "sufficient

7  factual matter" must make the claim at least plausible.  Iqbal,

8  556 U.S. at 678.  In the same vein, conclusory or formulaic

9  recitations of elements do not alone suffice.  Id.  "A claim has

10  facial plausibility when the plaintiff pleads factual content

11  that allows the court to draw the reasonable inference that the

12  defendant is liable for the misconduct alleged."  Id.

13      In granting a motion to dismiss, a court must also decide

14  whether to grant leave to amend.  Leave to amend should be freely

15  given where there is no "undue delay, bad faith or dilatory

16  motive on the part of the movant, . . . undue prejudice to the

17  opposing party by virtue of allowance of the amendment, [or]

18  futility of amendment . . . ."  Foman v. Davis, 371 U.S. 178, 182

19  (1962); Eminence Cap., LLC v. Aspeon, Inc., 316 F.3d 1048, 1052

20  (9th Cir. 2003).  Dismissal without leave to amend is proper only

21  if "the complaint could not be saved by any amendment."  Intri-

22  Plex Techs., Inc. v. Crest Grp., Inc., 499 F.3d 1048, 1056 (9th

23  Cir. 2007) (quoting In re Daou Sys., Inc., 411 F.3d 1006, 1013

24  (9th Cir. 2005)).

25                          **III. OPINION**

26      A.   Plaintiff Adequately Pleads Standing

27      As a threshold matter, Defendants argue that Plaintiff lacks

28  standing to bring his claims because he has failed to comply with

1  state law rules governing survival actions.  Mot. Dismiss at 4,

2  ECF No. 38-1.  In particular, Defendants contend that

3  California's requirements for survival actions are codified in

4  Code of Civil Procedure section 377.32, which specifies that a

5  plaintiff must provide a declaration demonstrating "facts in

6  support" of their position as a decedent's successor in interest,

7  including the date and place of the decedent's death, and

8  attaching a certified copy of the decedent's death certificate.

9  Id.  Defendants argue that, while "Plaintiff previously attached

10  Kevin Frey's death certificate to an earlier declaration, he has

11  never provided one for Judy Frey, nor has he stated the date of

12  her death."  Id.  Thus, Defendants argue Plaintiff's claims

13  cannot proceed until he "provid[es] the necessary death

14  certificate and date of death for Judy Frey . . . ."  Id.

15      Plaintiff has filed declarations which comply with these

16  requirements, setting forth the dates and places of Kevin and

17  Judy Frey's deaths, and providing copies of their death

18  certificates.  See generally Bailey Decl., ECF No. 15; Second Am.

19  Bailey Decl., ECF No. 41.  Accordingly, Defendants' motion to

20  dismiss Plaintiff's claims for lack of standing is denied.

21      B.  Plaintiff Fails to State an Excessive Force Claim

22          Against Defendants Rose and Garcia

23      Plaintiff asserts a Fourth Amendment excessive force claim

24  against Defendants Rose and Garcia, alleging they were "integral

25  participants in Deputy Larson's use of deadly force" when he shot

26  and killed Frey.  SAC ¶ 75.  Defendants argue Plaintiff has

27  failed to state a claim against either Defendant Rose or Garcia

28  as Plaintiff's allegations "do not plausibly establish that

1    either Defendant knew Deputy Larson intended to use deadly force

2    and acquiesced in such a plan or set in motion a series of acts

3    that they reasonably should have known would cause an

4    unconstitutional shooting."  Mot. Dismiss at 5-6.

5        The Court agrees.  Plaintiff does not allege Defendants Rose

6    and Garcia themselves used excessive force against Frey.  Rather,

7    he alleges they were integral participants in Defendant Larson's

8    use of excessive force. Peck v. Montoya, 51 F.4th 877, 889 (9th

9    Cir. 2022) (quoting Hernandez v. Skinner, 969 F.3d 930, 941 (9th

10   Cir. 2020)).  An official qualifies as an "integral participant"

11   where: (1) the official knew of and acquiesced in the

12   unconstitutional conduct as part of a common plan with those

13   directly responsible, or (2) the official set in motion a series

14   of acts that the official knew, or reasonably should have known,

15   would cause others to commit the constitutional injury.  Id. at

16   891.  In other words, the official must be more than a "mere

17   bystander."  Bravo v. City of Santa Maria, 665 F.3d 1076, 1090

18   (9th Cir. 2011).

19       Here, Plaintiff does not plausibly allege that Defendants

20   Rose and Garcia were integral participants in Defendant Larson's

21   allegedly unconstitutional shooting.  In relevant part, Plaintiff

22   alleges that Frey informed Defendant Rose he had a knife;

23   Defendant Rose ordered Frey to put down the knife and detained

24   him at gunpoint, at which point Defendants Garcia and Larson

25   arrived at the scene; Frey became increasingly agitated during

26   his interactions with Defendant Rose; Defendant Rose called a

27   crisis negotiation team but otherwise failed to de-escalate the

28   situation; while waiting for the crisis negotiation team,

7

1  Defendant Garcia threatened to release a K9 officer unless Frey

2  dropped the knife; in response, Frey began walking towards

3  Defendant Rose; and Defendant Larson shot Frey.  SAC ¶¶ 31-39,

4  52-64.  Accepting these allegations as true, they still do not

5  plausibly establish that either Defendant Rose or Garcia knew

6  Defendant Larson intended to use deadly force and acquiesced in

7  his plan to do so or set in motion a series of acts that they

8  "knew or reasonably should have known" would cause Defendant

9  Larson to shoot.  See, e.g., Peck, 51 F.4th at 891-92 (holding

10 that non-shooting deputies who provided armed backup and secured

11 a perimeter around the plaintiff who was armed and acting erratic

12 could not be deemed integral participants because the shooting

13 was unplanned, there was no agreement or plan to use excessive

14 force, and nothing in their conduct set in motion the later

15 unconstitutional act).

16     Plaintiff argues that Defendants Rose and Garcia should be

17 held liable as integral participants because they

18 unconstitutionally seized Frey by holding him at gunpoint and

19 threatened to release a K9 officer on him which "set in motion"

20 the later shooting by Defendant Larson.  Opp'n at 3-8, ECF No.

21 40.  However, merely seizing an individual does not necessarily

22 implicate that excessive force will be used during that seizure.

23 Plaintiff's complaint does not include facts demonstrating that

24 Defendants Rose or Garcia knew or should have known their seizure

25 of Frey would lead to his fatal shooting.  Indeed, it appears

26 that both Defendants attempted to resolve the encounter with Frey

27 through less lethal means: by calling a crisis negotiation team

28 (Defendant Rose) and by threatening use of a K9 officer

1   (Defendant Garcia).

2       Thus, Defendants' motion to dismiss Plaintiff's first cause

3   of action for excessive force against Defendants Rose and Garcia

4   is granted.  The Court also denies leave to amend this claim, as

5   the Court finds that there are no additional facts that Plaintiff

6   can plead to establish Defendants Rose and Garcia were integral

7   participants in Defendant Larson's excessive use of force.  Thus,

8   further amendment would be futile.

9       C.  <u>Plaintiff Fails to State an Unreasonable Seizure Claim</u>

10          <u>Against Defendants Larson, Rose, and Garcia</u>

11      Plaintiff asserts a Fourth Amendment unreasonable seizure

12  claim against Defendants Larson, Rose, and Garcia for detaining

13  Frey at gunpoint for over fifteen minutes, alleging the length

14  and manner of the stop were unreasonable and excessive given that

15  Defendants were investigating "the non-violent crime of

16  trespassing," Frey was "calm and non-threatening" during the

17  encounter, and Frey left the property when Defendant Rose

18  arrived.  SAC ¶¶ 77-80.  Defendants argue the seizure was

19  reasonable as Defendants Larson, Rose, and Garcia were responding

20  to a 911 call reporting Frey was allegedly trespassing on private

21  property and briefly detained Frey to investigate that suspected

22  offense.  Mot. Dismiss at 6.  Defendants argue that the stop was

23  further justified when Frey attempted to leave the scene, thereby

24  directly disobeying Defendant Rose's command that he was being

25  detained.  <u>Id.</u>

26      The Court finds that Frey was not unreasonably seized and

27  dismisses this claim.  The Fourth Amendment protects citizens

28  from unreasonable searches and seizures and precludes arrest

without probable cause.  U.S. Const. amend. IV.  Brief seizures that fall short of a traditional arrest do not violate the Fourth Amendment "if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot."  Bradford v. City of Seattle, 557 F. Supp. 2d 1189, 1197-98 (W.D. Wash. 2008) (internal quotations omitted); see also Terry v. Ohio, 392 U.S. 1, 23-27 (1968).  In analyzing whether a so-called Terry stop is justified by an officer's reasonable suspicion, courts consider whether, "in light of the totality of the circumstances, the officer had 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" United States v. Berber-Tinoco, 510 F.3d 1083, 1087 (9th Cir. 2007) (quoting United States v. Cortez, 449 U.S. 411, 417-18 (1981)).  This is not a particularly high threshold to reach and requires only a minimal level of objective justification.  United States v. Bontemps, 977 F.3d 909, 915 (9th Cir. 2020); Illinois v. Wardlow, 528 U.S. 119, 123 (2000).  A telephone tip to police can provide the basis for a Terry stop, so long as the tip bears "sufficient indicia of reliability to provide reasonable suspicion . . . ."  United States v. Edwards, 761 F.3d 977, 983 (9th Cir. 2014).

     Here, Defendant Rose initially detained Frey in response to a 911 call in which the caller reported a man who appeared to be either intoxicated or under the influence of drugs was trespassing on his property.  SAC ¶¶ 28-32.  When Defendant Rose arrived, Frey was at or near the property in question sitting beneath a tree.  Id. ¶ 31.  Plaintiff admits that "[t]he informant here was not entirely inaccurate, as Mr. Frey was in

1  the general area of E. Monte Vista Ave. and did in fact have a

2  knife as the caller reported."  Opp'n at 9.  Plaintiff also

3  concedes that Frey later moved in a manner "consistent with the

4  911 caller's reports that he was intoxicated."  SAC ¶ 57.  Given

5  these facts, the Court finds that the 911 call had sufficient

6  indicia of reliability to provide Defendant Rose with reasonable

7  suspicion Frey was or had been trespassing on the caller's

8  property, and to briefly seize Frey to investigate the alleged

9  trespass, which he attempted to do by telling Frey he was not

10 free to leave.  The Court also finds that, when Frey disregarded

11 that order, he created further lawful justification for his

12 continued detention under California Penal Code section 148(a),

13 which prohibits resisting or delaying an officer.  See United

14 States v. Taylor, 60 F.4th 1233, 1239, 1242 (9th Cir. 2023)

15 (prolonging a detention is permissible where there is reasonable

16 suspicion of an independent offense).

17      In opposition, Plaintiff relies on photographs and publicly

18 available data to argue that the seizure was unreasonable as Frey

19 "was visibly not trespassing on private property."  Opp'n at 4-5,

20 8-9.  Neither the photographs nor the data are referenced in the

21 Second Amended Complaint, and they may not be considered here.

22 See United States v. Ritchie, 342 F.3d 903, 907-08 (9th Cir.

23 2003) ("A court may [only] consider certain materials—documents

24 attached to the complaint, documents incorporated by reference in

25 the complaint, or matters of judicial notice—without converting

26 the motion to dismiss into a motion for summary judgment.").

27 Further, even if Frey were on public property by the time

28 Defendant Rose arrived at the scene, that does not negate the

1  possibility he had previously been trespassing on the 911

2  caller's land.

3      In short, the Court finds that Frey's detention by

4  Defendants was supported by reasonable suspicion.  Thus,

5  Plaintiff's second cause of action for unreasonable seizure

6  against Defendants Rose, Larson, and Garcia is dismissed.

7  Further, the Court finds that amendment would be futile, as there

8  are no further facts he could plead to establish Defendants

9  lacked reasonable suspicion when they detained Frey.  Thus, the

10  Court denies leave to amend this claim.

11      D.   Plaintiff Sufficiently States a Negligence Claim

12           Against Defendants Rose and Garcia

13      Plaintiff asserts a negligence claim against Defendants Rose

14  and Garcia premised on their failure to de-escalate the situation

15  with Frey and command that Frey drop his knife or be bitten by a

16  K9 officer while waiting for the crisis negotiation team, which

17  Plaintiff contends resulted in the use of deadly force by

18  Defendant Larson.  SAC ¶¶ 121-29.  Defendants argue that this

19  claim must be dismissed against Defendants Rose and Garcia

20  because "[t]here are no allegations creating a legal duty as to

21  these Defendants under California law."  Mot. Dismiss at 7.

22      The Court disagrees.  Under California negligence law, a

23  plaintiff must show that the defendant has "a legal duty to use

24  due care, a breach of such legal duty, and the breach as the

25  proximate or legal cause of the resulting injury."  Vasilenko v.

26  Grace Fam. Church, 3 Cal. 5th 1077, 1083 (2017) (quoting Beacon

27  Residential Cmty. Assn. v. Skidmore, Owings & Merrill LLP, 59

28  Cal. 4th 568, 573 (2014)).  The California Supreme Court has long

1    recognized that law enforcement officers have a duty to act

2    reasonably when using deadly force against a suspect.  <u>See Hayes</u>

3    <u>v. Cnty. of San Diego</u>, 57 Cal. 4th 622, 629 (2013).  "California

4    courts also recognize a special duty by law enforcement to use

5    reasonable care when arresting or detaining an individual because

6    '[o]nce in custody, an arrestee is vulnerable, dependent, subject

7    to the control of the officer and unable to attend to his or her

8    own medical needs.'"  <u>Alves v. Cnty. of Riverside</u>, 135 F.4th

9    1161, 1170 n.9 (9th Cir. 2025) (quoting <u>Frausto v. Dep't of Cal.</u>

10   <u>Highway Patrol</u>, 53 Cal. App. 5th 973, 993 (2020)).  "The

11   reasonableness of an officer's conduct is determined in light of

12   the totality of the circumstances."  <u>Hayes</u>, 57 Cal. 4th at 629.

13       Here, Plaintiff argues that Defendants owed Frey a

14   reasonable duty of care while detaining him and breached this

15   duty by failing to "employ better negotiation tactics rather than

16   continuing to shout commands at Mr. Frey, who was unresponsive,

17   while pointing guns at him," and "informing Mr. Frey that if he

18   did not comply with orders, the K9 would be released," tactics

19   which "further escalated a tense situation."  Opp'n at 10.

20   Defendants Rose and Garcia argue they did not owe Frey a duty of

21   care because they did not use deadly force against him.  Mot.

22   Dismiss at 7.  However, Defendants fail to address California

23   case law which holds that a police officer owes a reasonable duty

24   of care to an arrestee.  <u>See Frausto</u>, 53 Cal. App. 5th at 993.

25       As Plaintiff has alleged Defendants Rose and Garcia

26   negligently failed to exercise reasonable care while detaining

27   Frey, the Court finds Plaintiff has sufficiently pled a legal

28   duty.  Thus, Defendants' motion to dismiss Plaintiff's sixth

1    cause of action against Defendants Rose and Garcia is denied.

2        E.    Plaintiff Fails to State a Bane Act Claim Against

3              Defendants Rose and Garcia

4        Finally, Plaintiff asserts a claim under the Bane Act

5    against Defendants Rose and Garcia premised on his excessive

6    force and unreasonable seizure claims.  SAC ¶¶ 131–35.

7    Defendants Rose and Garcia argue this claim must be dismissed

8    because Plaintiff has failed to plead "any underlying

9    constitutional violation attributable to Rose or Garcia."  Reply

10   at 3–4, ECF No. 42.

11       The Court agrees.  The Bane Act provides a private cause of

12   action against any person who, "whether or not acting under color

13   of law, interferes by threat, intimidation, or coercion . . .

14   with the exercise or enjoyment by any individual or individuals

15   of rights secured by the Constitution or laws of the United

16   States . . . ."  Cal. Civ. Code § 52.1(b).  "The elements of a

17   Bane Act claim are essentially identical to the elements of a

18   [section] 1983 claim, with the added requirement that the

19   government official had a 'specific intent to violate' a

20   constitutional right."  Hughes v. Rodriguez, 31 F.4th 1211, 1224

21   (9th Cir. 2022).  Given that Plaintiff has failed to plausibly

22   plead his section 1983 excessive force and unreasonable seizure

23   claims against Defendants Rose and Garcia, the Court dismisses

24   Plaintiff's seventh cause of action against these Defendants.

25   See, e.g., Gomez v. Cnty. of Los Angeles, No. CV 09-02457 MMM

26   (CWx), 2009 WL 10699670, at *16 (C.D. Cal. Aug. 17, 2009)

27   (dismissing Bane Act claim for failure to plead constitutional

28   violation).  The Court also denies leave to amend as to this

1    claim given that the Court has dismissed Plaintiff's excessive

2    force and unreasonable seizure claims against Defendants Rose and

3    Garcia without leave to amend.

4                              **IV.  ORDER**

5         For the reasons above, Defendants' Motion to Dismiss (ECF

6    No. 38) is GRANTED in part as follows:

7         1.   Plaintiff's first cause of action for excessive force

8    is DISMISSED against Defendants Rose and Garcia WITHOUT LEAVE TO

9    AMEND;

10        2.   Plaintiff's second cause of action for unreasonable

11   seizure is DISMISSED against Defendants Rose, Larson, and Garcia

12   WITHOUT LEAVE TO AMEND; and

13        3.   Plaintiff's seventh cause of action for violations of

14   the Bane Act is DISMISSED against Defendants Rose and Garcia

15   WITHOUT LEAVE TO AMEND.

16        However, the Court DECLINES to dismiss Plaintiff's Second

17   Amended Complaint for lack of standing and Plaintiff's sixth

18   cause of action for negligence against Defendants Rose and

19   Garcia.

20        IT IS SO ORDERED.

21   Dated: October 29, 2025

22

23                              JOHN A. MENDEZ,
                                SENIOR UNITED STATES DISTRICT JUDGE

24

25

26

27

28

                                15